UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| DANIEL COBBLE, | ) | |
| | ) | Civil Action No. 08-123-ART |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Pending before the Court is the United States's Motion to Dismiss or for Summary Judgment, R. 33, regarding Plaintiff Daniel Cobble's Amended Complaint.  In response, Mr. Cobble filed a Notice of Fraudulent Pleading, R. 35, in which he states that the United States's motion is fraudulent because there is no evidence that Brady Miller, the Assistant United States Attorney who filed the motion, represents the United States.  The United States filed a reply, R. 36, to which Mr. Cobble filed a Notice of Second Fraudulent Pleading, R. 37, in which he reiterated his earlier concern about Mr. Miller's representation of the United States.

I.   **BACKGROUND**

A.   **Mr. Cobble's Administrative Tort Claim**

Based on a document attached to the United States's Motion to Dismiss/Summary Judgment, it appears that on May 14, 2007, Mr. Cobble sent a "Notice of Tort Claim" to Phyllis Pyles, Director of the Tort Branch of the Civil Division of the United States Department of Justice, as well as to several individuals who were the alleged tortfeasors.  R. 33, Ex. A, Notice of Tort Claim.  He did so to invoke his remedies under the Federal Tort Claims Act ("FTCA"),

28 U.S.C. § 2671, *et seq*. *Id.* at 10.  He sought $557,000,000 in damages, *id.* at 9–10, for a multitude of alleged harms, including (but not limited to) false imprisonment, conversion, breach of contract, fraud, conspiracy, emotional anguish, obstruction of justice, sedition, kidnap, and "kangaroo court trial proceedings," *id.* at 1.  It appears that Mr. Cobble's claims originate from his prosecution and conviction for pouring tar onto the steps of the Gene Snyder Federal Courthouse in Louisville, Kentucky.  *Id.* at 2–9.  On July 10, 2007, Mr. Cobble sent a "Notice/Report of Default of Tort Claim" to Ms. Pyles stating that the alleged tortfeasors were in default on his tort claim because they had not responded to his "Notice of Tort Claim."  R. 33, Ex. A, Notice of Default.  On July 27, 2007, Mr. Cobble sent an invoice to the Tort Branch of the Department of Justice requesting payment for $557,000,000.  R. 33, Ex. A, Invoice.  These facts, however, do not form the basis of Mr. Cobble's Amended Complaint.  Instead, the Amended Complaint is based primarily on the United States's failure to respond to a series of Uniform Commercial Code ("UCC") notices sent on Mr. Cobble's behalf.

### B.    Mr. Cobble's Complaint

At the request of Mr. Cobble, a notary public in California sent Ms. Pyles several UCC documents.  On December 18, 2007, the notary public sent a "Notice of Dishonor" pursuant to §§ 3-503 and 3-505 of the UCC[1] stating that Ms. Pyles had dishonored Mr. Cobble's presentments

---

[1] UCC § 3-503 is entitled "Notice of Dishonor."  It provides that the obligations of indorsers and drawers generally are contingent upon notice of dishonor.  *Id.* § 3-503(a).  It also sets forth the requirements for providing notice of dishonor.  *Id.* § 3-503(b)–(c).  UCC § 3-505 is entitled "Evidence of Dishonor."  It sets forth the types of materials by which notice of dishonor can be given and also provides for a "protest," which is a certificate of dishonor.  *Id.* § 3-505(a)–(b).  Article III of the UCC applies to negotiable instruments.  *Id.* § 3-102(a).  As a result, Mr. Cobble must assume that his presentments constitute negotiable instruments, as defined in § 3-104.  While the Court lacks subject matter jurisdiction over Mr. Cobble's contract claim and will not address its merits (as explained below), the

2

(which appear to refer to, among other things, Mr. Cobble's May 14, 2007, tort claim and the $557,000,000 invoice).  R. 6, Attach. 2.  On January 4, 2008, the notary public sent a "Notice of Protest And Opportunity to Cure."  *Id.* at Attach. 3.  In that document, the notary public informed Ms. Pyles that she had failed to respond to Mr. Cobble's presentments and to the December 18, 2007, Notice of Dishonor.  *Id.*  For this reason, the letter stated that Ms. Pyles was in default and had stipulated to the terms of Mr. Cobble's May 14, 2007, tort claim and his other presentments, but that she had a right to cure the default by performing according to the terms of the presentments.  *Id.*  On January 22, 2008, the notary public issued an apostille[2] and "Certificate of Protest" in response to Ms. Pyles's failure to respond to the Notice of Protest and Opportunity to Cure.  *Id.* at Attach. 4.  Lastly, on February 11, 2008, Mr. Cobble filed a UCC Financing Statement with the Kentucky Secretary of State indicating that he accepted United States Treasury Bonds in the amount of $552,000,000[3] as collateral for his December 18, 2007, judgment against the United States.  *Id.* at Attach. 1.

On February 26, 2008, Mr. Cobble filed a Complaint in the United States District Court, Western District of Kentucky.  R. 1.  Two days later and before any responsive pleading had been filed, Mr. Cobble filed a two-count Amended Complaint.  R. 6.  The claims Mr. Cobble asserts in

---

Court fails to see how Mr. Cobble's presentments constitute negotiable instruments, which require, among other things, "an unconditional promise or order to pay a fixed amount of money," *id.* § 3-104(a).

[2] An apostille is a "marginal note or observation; esp., a standard certification provided under the Hague Convention for authenticating documents used in foreign countries."  BLACK'S LAW DICTIONARY 93 (7th ed. 1999).  It is a certification process similar to notarization.  *Corovic v. Mukasey*, 519 F.3d 90, 93 n.2 (2d Cir. 2008).

[3] It is unclear why Mr. Cobble sought to accept only $552 million in collateral when he filed a tort claim in the amount of $557 million.

his Amended Complaint are as follows: (1) "Debtor United States has not remitted payment of said $552,000,000.00 to the Secured Party, for its 5/14/07 *Conditional Acceptance of Value*.  So, Debtor remains in default and in breach-of-contract pursuant to the Dec. 18, '08 administrative Notarial Protest **Judgment**, the Notice of Dishonor," and (2) "The findings-of-fact reveal that Cobble's conviction is improper, untruthful; and by law, that conviction must be overturned, as again pursuant to the persistent legal admissions of the United States."  *Id.* at ¶¶ 10–11 (emphasis in original).

Thus, it appears to the Court that the first claim in the Amended Complaint presents a contract claim relating to the United States's failure to respond to the UCC documents.  This conclusion is supported by allegations in the Amended Complaint and in other pleadings stating that this action only seeks ratification of a judgment.  *Id.* at ¶ 1 ("[T]his action only requires ratification of an 'administrative commercial Notarial Protest **Judgment** . . . .") (emphasis in original); R. 28 at 1 ("[T]his matter is only a ***ministerial function*** for ratifying a lawful administrative judgment . . . .") (emphasis in original).  The Amended Complaint, however, also briefly references the FTCA and the tort claim he submitted to the Department of Justice.  R. 6 ¶ 1.  The only connection between the tort claim and the first claim in his Amended Complaint appears to be that the tort claim is the alleged obligation for which Mr. Cobble was demanding payment in the UCC notices sent to the Department of Justice.  The Court addresses this connection in more detail below.  With respect to the second claim in the Amended Complaint, the Court views it as seeking to overturn Mr. Cobble's conviction for tarring the steps of the Gene Snyder Federal Courthouse.

II.  **ANALYSIS**

A.  **Alleged Fraudulent Pleadings by the United States**

Mr. Cobble argues that the pleadings filed by the United States in this action are fraudulent because there is no evidence that Brady Miller, the Assistant United States Attorney who filed the pleadings, represents the United States in this case.  R. 35 & 37.  This argument is mistaken.

The United States Attorney for the Western District of Kentucky, David Huber, is authorized, within his district, to "prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned."  28 U.S.C. § 547(2).  As United States Attorney, Mr. Huber may appoint assistant United States attorneys, such as Mr. Miller, "when the public interest so requires."  28 U.S.C. § 542(a).  As far as Mr. Miller's appearance in this case, Local Rule 83.5 states that an attorney is deemed an attorney of record by: (1) appearing in court on behalf of a party; (2) filing an entry of appearance; (3) signing a pleading, motion, or other paper as attorney for a party; or (4) listing his or her name as an attorney–other than of counsel–on a pleading, motion, or other paper.  Here, Mr. Miller has signed several pleadings and has listed his name as an attorney on these pleadings.  R. 26, 33 & 36.  Under LR 83.5, therefore, Mr. Miller is deemed an attorney of record for the United States in this case.

Mr. Cobble asserts, without any support, that LR 83.5 does not apply here because there are questions as to whether Mr. Miller is a valid counsel for the United States.  R. 37 at 1.  The Court does not find Mr. Cobble's argument persuasive because nothing in LR 83.5 suggests such a limitation.  As such, the Court will proceed to consider the merits of the United States's Motion

5

to Dismiss/Summary Judgment.

**B.      Mr. Cobble's Breach-of-Contract Claim**

Because Mr. Cobble's first claim in his Amended Complaint is based on the United

States's alleged breach of contract, the claim must be transferred to the United States Court of

Federal Claims, which is the only court that has jurisdiction over this claim.

To bring suit against the United States, a plaintiff must establish that the United States

has waived its sovereign immunity.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The

United States, as sovereign, is immune from suit save as it consents to be sued.").  The Tucker

Act[4] gives the United States Court of Federal Claims "exclusive jurisdiction to render judgment

upon any claim against the United States for money damages exceeding $10,000 that is 'founded

either upon the Constitution, or any Act of Congress or any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort.'"  *E. Enters. v. Apfel*, 524 U.S. 498, 520

(1998) (quoting 28 U.S.C. § 1491(a)(1)); *see also Veda, Inc. v. U.S. Dep't of the Air Force*, 111

F.3d 37, 39 (6th Cir. 1997) ("The [Tucker] Act gives the Federal Claims Court exclusive

jurisdiction over all claims of damages against the United States that are in excess of $10,000

and that are founded upon the Constitution, any Act of Congress, any regulation of any executive

department, or upon any express or implied contract with the United States.").  By giving the

---

[4] The Tucker Act states, in relevant part, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).

6

Court of Federal Claims jurisdiction over certain claims, the Supreme Court has held that the Tucker Act constitutes a waiver of sovereign immunity with respect to the claims it covers. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

While Mr. Cobble asserts a contract claim seeking monetary damages in excess of $10,000, the United States's waiver of sovereign immunity in the Tucker Act does not apply to this claim because he filed suit in the District Court for the Western District of Kentucky, not the Federal Claims Court. As such, sovereign immunity bars this claim, and this Court lacks subject matter jurisdiction over it. *See Matthews v. United States*, 810 F.2d 109, 111 (6th Cir. 1987) ("It is only under the terms of the Tucker Act that the United States waives its sovereign immunity to such claims, and this consent to suit is a jurisdictional prerequisite."); *Hahn v. United States*, 757 F.2d 581, 586 (3d Cir. 1985) (same).

Under 28 U.S.C. § 1631, if a court lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed," which, in this case, is the Federal Claims Court. While Mr. Cobble's breach-of-contract claim may lack merit, this Court does not have the jurisdiction to proceed to the merits–only the Court of Federal Claims does. The Court, therefore, will transfer the breach-of-contract claim to the United States Court of Federal Claims. *See Sosa v. Sec'y, Dep't of Defense*, No. 02-5488, 2002 WL 31119700, at *2–3 (6th Cir. Sept. 24, 2002) (unpublished) (reversing the district court's dismissal of a Tucker Act claim and ordering it transferred to the Federal Claims Court); *Matthews*, 810 F.2d at 113 (transferring Tucker Act claim to the Federal Claims Court).

7

**C.     Mr. Cobble's Claim to Overturn His Conviction**

In addition to his breach-of-contract claim, Mr. Cobble also asks this Court to overturn his criminal conviction in case number 03:06-cr-631-R.  R. 6, *ad damnum* clause.  No such case appears to exist.  There is, however, a case number 3:06-cv-631-JHM-ERG in which Mr. Cobble filed suit against Value City Furniture based on furniture he purchased there.  Rather than the civil suit against Value City, it appears Mr. Cobble seeks to overturn his conviction for tarring the steps of the federal courthouse in Louisville, Kentucky, in case number 3:06-cr-93-TBR.[5]  In that case, Mr. Cobble was found guilty of depredation against property of the United States, 18 U.S.C. § 1361, and malicious injury to property of the United States, 18 U.S.C. § 1363.  *United States v. Cobble*, No. 06-cr-93-TBR, R. 232 at 2.  On April 27, 2007, he received a sentence of time served and two years of supervised release for each count, which run consecutively.  *Id.* at 3–4.  The Court thus will assume that Mr. Cobble, through the Amended Complaint, seeks to overturn the conviction from his criminal case rather than the civil case he references.

Mr. Cobble cannot overturn his criminal conviction in this manner.  Rather, the validity of an underlying conviction "may be challenged only on direct appeal or through a habeas corpus proceeding."  *United States v. Warren*, 335 F.3d 76, 78 (2d Cir. 2003); *see also Heck v. Humphrey*, 512 U.S. 477, 486 (1994) (noting that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments"); *Dunn v. Smith*, No. 94-1920, 1995 WL 218470, at *2 (6th Cir. Apr. 12, 1995) (unpublished) (noting that the plaintiff "may not challenge his conviction collaterally in a civil rights action for damages").  Here, Mr. Cobble

_____

[5]  In other pleadings, Mr. Cobble states he seeks to overturn his conviction in case number 03:06-cr-93, R. 35 at 2, and has correctly distinguished between his pending criminal and civil cases, R. 37 at 2.

appealed his conviction in 06-cr-93-TBR, *United States v. Cobble*, No. 06-cr-93-TBR, R. 236, but the Sixth Circuit dismissed the appeal for want of prosecution, *id.* at R. 247.  The Court is not aware of Mr. Cobble filing a habeas corpus petition.  His claim to overturn his conviction in his Amended Complaint, therefore, is procedurally improper and must be dismissed.

### D.    Further Claims

In passing, Mr. Cobble identifies the FTCA in his Amended Complaint.  R. 6 ¶ 1. Neither Count I nor Count II, however, appear to assert a claim under the FTCA.  *See id.* at ¶¶ 10, 11.  The facts underlying the breach-of-contract claim are the series of UCC documents sent to the Department of Justice and its failure to respond to them.  In contrast, the facts underlying Mr. Cobble's tort claim relate to his arrest and conviction for tarring the courthouse steps.  While the two claims appear connected in that the tort claim is the alleged obligation for which Mr. Cobble was demanding payment in his UCC notices, Mr. Cobble through the Amended Complaint, has chosen only to pursue the breach of contract claim at this time.  And, while a Court must construe a *pro se* complaint liberally, it is not the province of the Court to add or subtract claims from a litigant's complaint.

For this reason, the Court need not address Mr. Cobble's tort claim or the issues relating to it, such as exhaustion of administrative remedies or whether *Heck v. Humphrey*, 512 U.S. 477 (1994), bars that claim because a ruling on it in Mr. Cobble's favor would imply the invalidity of his criminal conviction.  *See Hinton v. United States*, No. 03-4146, 2004 WL 540473, at *1 (6th Cir. Mar. 17, 2004) (unpublished) (stating that "plaintiff's claims are not cognizable under the FTCA insofar as a ruling in plaintiff's favor would imply the invalidity of plaintiff's disciplinary

conviction").

## III.   CONCLUSION

In sum, the Amended Complaint does not assert Mr. Cobble's tort claim; rather, it asserts claims for the United States's breach of contract and for overturning his conviction.  With respect to the contract claim, the Court transfers it to the United State Court of Federal Claims because it is the only court with jurisdiction over the claim.  Mr. Cobble's claim of an improper conviction is dismissed because he can attack the validity of that conviction only through direct appeal or a habeas corpus proceeding, not through a civil action such as this one.

Accordingly, it is hereby **ORDERED** as follows:

(1)   Defendant's Motion to Dismiss or for Summary Judgment, R. 33, is **GRANTED IN PART** and **DENIED IN PART**.

(2)   Count I of Plaintiff's Amended Complaint is **TRANSFERRED** to the United States Court of Federal Claims.

(3)   Count II of Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to his right to pursue it in the proper procedural posture.

(4)   This matter shall be **STRICKEN** from the Court's active docket.

This the 5th day of August, 2008.



Signed By:

*Amul R. Thapar*

United States District Judge